# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

MONICA LYA GILABERT,
                        **Plaintiff,**

-vs-                                                    Case No.  6:08-cv-1876-Orl-DAB

COMMISSIONER OF SOCIAL
SECURITY,
                        **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's administrative decision to deny Plaintiff's application for social security disability benefits.  For the reasons set forth herein, the decision of the Commissioner is hereby **AFFIRMED.**

### PROCEDURAL HISTORY

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on March 25, 2004, alleging she became disabled on November 16, 2003 (R. 268-70).  Her application was denied initially and on reconsideration, and Plaintiff requested and received a hearing before an Administrative Law Judge (herein "ALJ").  The ALJ issued an unfavorable decision on October 30, 2007, finding Plaintiff was not disabled (R. 191-200). On September 12, 2008, the Appeals Council denied Plaintiff's request for review (R. 8-10, *see also* R. 6-7), making the ALJ's determination, the final decision of the Commissioner.

Plaintiff timely filed a civil action in this Court (Doc. No. 1), and the parties have consented to the jurisdiction of the United States Magistrate Judge.  The matter has been fully briefed, and is now ripe for review pursuant to 42 U.S.C. § 405(g).

### NATURE OF CLAIMED DISABILITY

Plaintiff alleges disability  due to bipolar disorder, panic disorder, spastic colon, and "thyroid" (R. 275).

*Summary of Evidence Before the ALJ*

Plaintiff was 34 years of age at her alleged onset date, with an 11th grade education and relevant work experience as a cosmetics sales person and a make up artist (R. 268, 280, 276, 747).

The medical record for the applicable time period is set forth in detail in the decision and, in the interests of privacy and brevity, will not be repeated here except as necessary to address Plaintiff's specific objections. By way of summary, the ALJ determined that Plaintiff had the severe impairments of status post gastric bypass surgery, IBS,[1] obesity, and depression (R. 193), and the voluminous record supports this uncontested finding. In addition to the medical records of Plaintiff's treating providers, the record also includes the deposition of Plaintiff's treating psychiatrist, and other opinions from non-examining state agency practitioners. At hearing, Plaintiff testified, as did a Vocational Expert. Additionally, a medical expert appeared (telephonically) and testified.

After evaluating the evidence, the ALJ determined Plaintiff's residual functional capacity ("RFC") to include a "substantial range of light work." (R. 196). With respect to her mental limitations, the ALJ determined that Plaintiff was moderately limited as to concentration, persistence and pace but was capable of appropriate interaction within the work place and occasional contact with the public. *Id.* After concluding that Plaintiff could not return to her past relevant work, the ALJ relied on vocational expert testimony to find that a significant number of jobs existed which Plaintiff could perform (R. 199 ), and Plaintiff was therefore not disabled (R. 200).

## STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings

___

[1] Irritable Bowel Syndrome.

are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## ISSUES AND ANALYSIS

Although Plaintiff does not challenge the ALJ's finding with respect to her physical exertional limitations, Plaintiff contends that the ALJ erred in his consideration of the opinion of her treating psychiatrist. After careful review of the voluminous record and the applicable law, the Court finds no error.

### Treating Physicians

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-

-3-

supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

The medical record establishes that Plaintiff has been under psychiatric care since prior to her alleged date of onset. In addition to regular visits with her psychiatrist, the record shows that Plaintiff was hospitalized on three separate occasions for mental issues related to substance abuse.[2]

---

[2]in February 2005, Plaintiff was admitted to the hospital after overdosing on prescription medication, and experiencing opiate withdrawal symptoms in the form of severe anxiety, tremors, insomnia, diminished energy, inability to function, suicidal thoughts, and impaired concentration and memory (R. 595). She was assessed with Bipolar disorder and opiate dependence and discharged on the condition that she attend Narcotics Anonymous meetings (R. 596-97). In May 2005, she was admitted to the hospital under the Baker Act, with complaints of feeling depressed and having suicidal thoughts (R. 517). Her urine drug screen was positive for opioids *Id*. Her GAF was 57 at discharge. In August 2005, she was hospitalized for the same complaints and was diagnosed with moderate bipolar disorder, psychostimulant abuse, opiate abuse, and amphetamine abuse (R. 575). On August 8, 2005, she reported to her psychiatrist that she abuses drugs to "lose weight and 'get high'" (R. 539).

On October 2006, Plaintiff's long time treating psychiatrist, Dr. Adly Thebaud, completed an assessment form that indicated that Plaintiff was "unable to meet competitive standards" in 16 of the 25 listed areas of functioning and opined that she was "seriously limited but not precluded" in the remaining 9 areas (R. 620-21). He checked boxes indicating that Plaintiff has "Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes," as well as the symptoms of: 1. Anhedonia or pervasive loss of interest in almost all activities, 2. Appetite disturbance with change in weight, 3. Decreased energy, 4. Blunt, flat or inappropriate effect, 5. Feelings of guilt or worthlessness, 6. Impairment in impulse control, 7. Generalized persistent anxiety, 8. Mood disturbance, 9. Difficulty thinking or concentrating, 10. Psychomotor agitation or retardation, 11. Pathological dependence, passivity or aggressivity, 12. Persistent disturbances of mood or affect, 13. Change in personality, 14. Paranoid thinking or inappropriate suspiciousness, 15. Intense and unstable interpersonal relationships and impulsive or damaging behavior, 16. Hallucinations or delusions, 17. Motor tension, 18. Emotional lability, 19. Manic syndrome, 20. Deeply ingrained maladaptive patterns of behavior, 21. Pathologically inappropriate suspiciousness or hostility, and 22. Memory impairment - short (R. 619). He further noted that Plaintiff could not handle the stress of a work place environment because she decompensates easily under stress, could not concentrate, was easily irritable, had low frustration tolerance, and had a very limited ability to function in the work place (R. 621). He thought Plaintiff would be absent from work more than four days per month (R. 622), and attributed these limitations to depressive mood, mood swings, irritability, anger, lack of motivation and concentration, "easily frustrated," auditory hallucinations and paranoid ideation (R. 618). At the hearing, the ALJ acknowledged that if he were to find Dr. Thebaud's assessment credible, "there would be no question that [Plaintiff could not] work" (R. 733).

In his decision, the ALJ credited Dr. Thebaud's treatment notes but "discredited" the 2006 assessment, as being unsupported by the medical record and inconsistent with Dr. Thebaud's own treatment notes, the testimony of the Medical Expert, and the opinions of the state agency psychological consultants (R. 195, 198).  Applying the appropriate standard and reviewing the evidence as a whole, the Court concludes that there is more than a scintilla of evidence to support this finding, and therefore, it must be affirmed.

The medical record contains treatment notes from Plaintiff's numerous visits to her treating psychiatrist during the period in question (R. 537-567;623-648), and Dr. Thebaud provided a sworn statement in a deposition taken by Plaintiff's counsel (R. 649-712).   At hearing, psychologist Neil Lewis, PhD., testified that he reviewed these treatment notes and the 2006 assessment and "that level of severity [in the assessment] is not at all supported by his notes." (R. 728).  The ALJ adopted Dr. Lewis' opinion in his decision, and the Court finds this conclusion to be appropriately supported by the record.

As pointed out by the Commissioner, the treatment notes are replete with normal or near normal mental status examinations and Global Assessment of Functioning scores ("GAF") of 58-60, indicating moderate symptoms or difficulties.[3]  *See, e.g.,* R. 553 (alert/oriented x3, memory intact, insight and judgment appropriate); R. 550, 552 (GAF- 60); R. 549 ("very depressed" but alert, oriented, intact memory, insight and judgment appropriate); R. 547 (normal mental status exam, GAF 59); R. 544 (normal mental status exam-GAF -58): R. 538 (normal mental status and GAF of 59).

---

[3]"The GAF score is meant to be a procedure for measuring overall severity of psychiatric disturbance. A rating of 51 to 60 indicates some moderate symptoms (e.g., a flat affect and circumstantial speech, occasional panic attacks) OR some difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Sensabaugh v. Astrue  2009 WL 5171758, 1 (M.D. Fla. 2009) (slip opinion) *citing*  Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) at 34 (4th ed.1994).

Indeed, although Dr. Thebaud set forth severe limitations in the assessment, at the same time he assigned Plaintiff a current GAF score of 54, with a past year high score of 59 (R. 618). While Plaintiff is correct in noting that GAF scores are not, in and of themselves, controlling for disability purposes, the ALJ was not relying on the GAF scores as a *per se* litmus test for disability, but as evidence of inconsistencies with Dr. Thebaud's assessment of limited functionality (*See* R. 194-95). In this context, there is no error.

The mild to moderate findings inherent in the treatment records were not the only inconsistencies noted. Dr. Lewis testified that a person suffering from all of the things set forth in the 2006 assessment would likely not be able to function outside of a supportive environment (R. 729, 733). There is no evidence, however, that Dr. Thebaud referred Plaintiff for inpatient treatment or for long term placement in an appropriate facility. Moreover, the assessment itself presents inconsistencies. Despite a finding that Plaintiff was seriously limited in each and every area of functioning, with a memory impairment and no ability to concentrate, Dr. Thebaud nonetheless found that she was capable of managing benefits in her own best interest (R. 622). Further, as pointed out by Dr. Lewis, despite the hospitalizations for opiate and substance abuse, Dr. Thebaud opined that alcohol or substance abuse did *not* contribute to Plaintiff's limitations (R. 622, 728).[4] This is notable in that Dr. Thebaud assessed Plaintiff with a history of polysubstance abuse on December 6, 2005 (R. 636), after she was "out of detox." The conclusion that the assessment is unsupported by the medical record and inconsistent with the treatment notes is amply supported. As such, the ALJ's decision to discredit the opinion was not error.

The medical record also contains the opinions of three non-examining consultants, none of whom found Plaintiff to be disabled. Dr. Lewis testified that he considered Plaintiff to have a

---

[4]Pursuant to Public Law 104-121, Plaintiff is not entitled to benefits if drug addiction is a contributing factor material to the disability determination. 42 U.S.C. § 423 (d)(2)(c) (DA&A Amendments); 20 C.F.R. § 404.1535.

moderate limitation in concentration, persistence and pace (R. 805). Drs. Alvarez-Mullin and Bee reviewed the record in June 2004 and May 2005 respectively, and concluded that Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods; complete a normal workday and work week without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods, and Dr. Bee included a moderate limitation in the ability to set realistic goals or make plans independently of others (R. 473-74, 527). The assessments of these non-examining professionals is consistent with the ALJ's finding that Plaintiff was moderately limited as to concentration, persistence, and pace, and was capable of appropriate interaction within the work place and occasional contact with the public (R. 196). Plaintiff contends that it was error for the ALJ to rely on this evidence, as "the opinion of a non-examining reviewing physician is entitled to little weight and, taken alone, does not constitute substantial evidence to support an administrative decision." *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990). The Court is unpersuaded, however, as the opinions were not "taken alone." As is clear from the decision, the ALJ reviewed the totality of the medical evidence, including the treatment notes from all providers, "accepted Dr. Thebaud's diagnosis of depression" and considered the non-examining opinions, as well (R. 193-98). No error is shown. *See Ogranaja v. Commissioner of Social Security,* 186 Fed.Appx. 848, 851 (11th Cir. 2006) ("The ALJ arrived at his decision after considering the record in its entirety and did not rely solely on the opinion of the state agency physicians. The ALJ found that, unlike Dr. Diaz's opinions, the expert opinions of the non-examining state agency physicians were supported by and consistent with the record as a whole. Under the circumstances, substantial evidence supports the ALJ's decision to assign great weight to those opinions.").

A final note is in order. It is clear from this record that Plaintiff faces significant challenges in her physical and mental health. In affirming the decision below, this Court does not find that

Plaintiff is not seriously impaired, nor does the Court imply that the decision of the ALJ was the only decision justified on these facts. Rather, the affirmance recognizes that it is not the task of the reviewing court to weigh the evidence anew, but to apply the appropriate standard of review. Applying that standard to the record here, the Court finds that the decision of the Commissioner is supported by substantial evidence and was made in accordance with proper legal standards. As such, it is **AFFIRMED.**

### CONCLUSION

The administrative decision is **AFFIRMED.** The Clerk is directed to enter judgment accordingly, and close the file.

**DONE** and **ORDERED** in Orlando, Florida on February 10, 2010.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record